Eastern District of Kentucky
FILED
FEB 16 2023
AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:22-92-DCR-1

UNITED STATES OF AMERICA            PLAINTIFF

V.          **PLEA AGREEMENT**

LUIS FERNANDO LARA-GARCIA            DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Counts 1 – 4 and 11 of the superseding indictment. Count 1 charges conspiracy to distribute 400 grams or more of fentanyl and 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846; Count 2 charges possession with intent to distribute 400 grams or more of fentanyl and 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1); Count 3 charges possession of a firearm by an alien, in violation of 18 U.S.C. § 922(g)(5)(A); Count 4 charges conspiracy to launder drug proceeds, in violation of 18 U.S.C. § 1956(h); and Count 11 charges illegal re-entry into the United States subsequent to removal or deportation, in violation of 8 U.S.C. § 1326(a). The Defendant also agrees to forfeiture and the imposition of a forfeiture money judgment, as outlined in the forfeiture allegation of the superseding indictment. Pursuant to Rule 11(c)(1)(A), the United States

1

will move at sentencing to dismiss Counts 7 and 10 of the superseding indictment, and the original indictment as to this defendant.

    2a.    The essential elements of Count 1 are as follows:

(a) First, that two or more persons formed, reached, or entered into an agreement or understanding to distribute Schedule II controlled substances, including fentanyl and cocaine.

(b) Second, that at some time during the existence or life of the agreement or understanding, the Defendant knew the purpose of the agreement and deliberately joined the agreement or understanding.

(c) Third, that the amount of fentanyl attributable to the Defendant as a result of his own conduct, or the conduct of others reasonably foreseeable to him, was 400 grams or more, and the amount of cocaine attributable to the Defendant as a result of his own conduct, or the conduct of others reasonably foreseeable to him, was 5 kilograms or more.

    2b.    The essential elements of Count 2 are as follows:

(a) First, that the Defendant knowingly or intentionally possessed fentanyl and cocaine, each of which is a Schedule II controlled substance.

(b) Second, that the Defendant possessed fentanyl and cocaine with the intent to distribute the substances to another.

(c) Third, that the quantity of fentanyl was 400 grams or more, and the quantity of cocaine was 500 grams or more.

2c. The essential elements of Count 3 are as follows:

(a) First, that the Defendant knowingly possessed at least one firearm.

(b) Second, that at the time he possessed a firearm, the Defendant was, in fact, an alien illegally and unlawfully present in the United States.

(c) Third, that the Defendant knew that he was an illegal alien at the time he possessed a firearm.

(d) Fourth, that the firearm crossed a state line prior to the Defendant possessing the firearm.

2d. The essential elements of Count 4 are as follows:

(a) First, that the Defendant and at least one other person formed, reached, or entered into an agreement or understanding to commit money laundering crimes.

(b) Second, that the Defendant knowingly and voluntarily joined the conspiracy.

2e. The essential elements of Count 11 are as follows:

(a) First, that the Defendant is an alien, that is, a native and citizen of a country other than the United States.

(b) Second, that the Defendant had previously been removed or deported from the United States.

(c) Third, that after his removal or deportation, the Defendant was found in the United States.

(d) Fourth, that the Defendant did not obtain consent from the requisite authorities to reapply for admission to the United States prior to his return to the United States.

3. As to Counts 1 – 4 and 11, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

3

(a) From January 2022 to August 2022, the Defendant agreed with at least one other person to distribute large quantities of fentanyl and cocaine in the Eastern District of Kentucky (EDKY). The Defendant admits that the quantity of drugs attributable to him by his own conduct and by that of coconspirators that was reasonably foreseeable to him as a member of the drug conspiracy includes fentanyl and cocaine with a combined converted drug weight of at least 10,000 but less than 30,000 kilograms.

(b) Drugs that were distributed by the Defendant and codefendants were kept at apartment maintained by a codefendant on Lakeshore Drive in Lexington. The Defendant had access to this apartment with his own key. On April 3, 2022, DEA agents executed a search warrant at this apartment on Lakeshore Drive. Agents located and seized the following items:

| Evidentiary item | Where located | Lab result |
| --- | --- | --- |
| 7 kilograms of suspected fentanyl (Exhibit 7) | Bedroom closet | 7,039 grams containing fentanyl |
| Loaded shotgun | Bedroom closet | |
| Blender with heavy drug residue and plastic bags (Exhibit 6) | Bedroom closet | No request to the lab for analysis |
| One (1) kilogram of suspected cocaine (Exhibit 8) | Bedroom, under the bed | 1,001 grams containing cocaine |
| Small bag of suspected cocaine (Exhibit 4) | Bedroom, under the mattress | 1.78 grams containing fentanyl |
| 3 bags of suspected cocaine (Exhibit 5) | Dining room table | 5.01: 28.11 grams containing cocaine<br>5.02: 27.90 grams containing fentanyl |
| Digital scale | Dining room table | |
| Heat sealing machine | Dining room table | |
| Packaging for controlled substances | Dining room table | No request to the lab for analysis |
| Suspected cocaine (Exhibit 2) | Living room, under loveseat | 16.32 grams containing cocaine |
| 2 baggies of suspected cocaine (Exhibit 3) | Kitchen, above refrigerator | 106.73 grams containing cocaine |
| Suspected cocaine (Exhibit 1) | Kitchen, above stove | 503.97 grams containing cocaine |

|  | Total fentanyl | 7,069 grams |
|--|--|--|
|  | Total cocaine | 1,656 grams |
|  | Total Converted Drug Weight (CDW) | 18,003 kilograms |

(c)     Also on April 3, 2022, DEA agents executed a search warrant at the Defendant's residence on River Park Drive in Lexington, KY. Agents located a total of 4 firearms, ammunition, and 2 ballistic vests. Those firearms are as follows:

| Firearm | Model | Serial Number |
|--|--|--|
| Taurus 9mm caliber pistol | PT709 Slim | TJS39219 |
| DPMS Inc. .308 caliber pistol | Panther LR-308 | 113182 |
| Romarm/Cugir 7.62 x 39mm pistol | Micro Draco | PE-1750-2018 |
| Smith and Wesson .40 caliber pistol | M & P 40 Shield | LEZ9172 |
|  |  |  |

The Defendant admits that he knowingly possessed these firearms. The Defendant further admits that, at the time he possessed these firearms, he was, in fact, an alien illegally and unlawfully present in the United States and knew that he was an alien. The Defendant acknowledges that an agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives examined the origins of the firearms and determined that they were manufactured outside the state of Kentucky and had thus crossed a state line prior to the Defendant's possession of these firearms.

(d)     The Defendant admits that he agreed with at least one other person to launder drug proceeds by various methods. One method utilized by the Defendant, and others, was promotional money laundering. That is, after the sale of controlled substances, the Defendant conducted financial transactions with drug proceeds (U.S. currency) by delivering the U.S. currency to individuals who were couriers (or were believed to be couriers) for the larger drug trafficking and/or money laundering organization(s). These deliveries of drug proceeds (commonly referred to as "money drops") affected interstate commerce and were intended to promote the ongoing drug trafficking activity. As one example, the Defendant delivered $190,920.00 to a codefendant on January 22, 2022, for the purpose of promoting drug trafficking activity.

(e) The Defendant admits that he is an alien, that is, he is a native and citizen of Mexico, and has no legal status in the United States. On or about June 13, 2018, the Defendant was removed or deported from the United States. After his removal or deportation to Mexico, the Defendant returned to the United States without getting consent from the requisite governmental authorities to do so. On August 4, 2022, the Defendant was found to be illegally and unlawfully present in Fayette County, in the Eastern District of Kentucky.

4. The statutory punishment for Counts 1 and 2 is imprisonment for not less than 10 years nor more than life imprisonment, a fine of not more than $10,000,000, and a term of supervised release of not less than 5 years. The statutory punishment for Count 3 is imprisonment for not more than 10 years, a fine of not more than $250,000, and a term of supervised release of not more than 3 years. The statutory punishment for Count 4 is not more than 20 years, a fine of not more than $500,000 or twice the value of the property involved in the transaction (whichever is greater) and a term of supervised release of not more than 3 years. The statutory punishment for Count 11 is imprisonment for not more than 2 years, a fine of not more than $250,000, and a term of supervised release of not more than 1 year. A mandatory special assessment of $100 per count applies, and the Defendant will pay this $500 assessment to the U.S. District Court Clerk at the time of the sentencing hearing.

5. Pursuant to Rule 11(c) (1) (B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2021, Manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all the facts set forth in paragraph three and the provided discovery materials.

(c) Pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(3), the base offense level for Counts 1 and 2 is 34 based upon a converted drug weight of at least 10,000 kilograms but less than 30,000 kilograms.

(d) Pursuant to U.S.S.G. § 2D1.1(b)(1), the base offense level for Counts 1 and 2 is increased by 2 levels for possession of a firearm.

(e) Pursuant to U.S.S.G. § 2K2.1(a)(4)(B), the base offense level for Count 3 is 20.

(f) Pursuant to U.S.S.G. § 2K1.1(b)(1)(A), increase the base offense level for Count 3 by 2 levels because the offense involved 3 to 7 firearms.

(g) Pursuant to U.S.S.G. § 2K1.1(b)(6)(B), increase the base offense level for Count 3 by an additional 4 levels because the defendant possessed a firearm in connection with another felony offense.

(h) Pursuant to U.S.S.G. § 2S1.1(a)(1), the base offense level for Count 4 is 36 based on the offense level for the underlying offense(s) from which the laundered funds were derived, that is, Counts 1 and 2.

(i) Pursuant to U.S.S.G. § 2S1.1(b)(2)(B), increase the offense level by 2 levels because the Defendant's conviction is for a violation of 18 U.S.C. § 1956.

(j) Pursuant to U.S.S.G. §§ 3D1.2(d), the offenses in Counts 1 - 4 group. Pursuant to U.S.S.G. § 3D1.3(a), the highest offense level for any individual count within a count group shall be the controlling offense level for the entire group, which, in this case, is an offense level of 38 as to Count 4.

(k) Pursuant to U.S.S.G. § 2L1.2(a), the base offense level for Count 11 is 8. Count 11 would not group with Counts 1-4. Pursuant to U.S.S.G. § 3D1.4(a)-(c), one unit would be assigned to Count Group One (Counts 1-4), with an offense level

of 38. No units would be assigned to Count Group Two (Count 11), with an offense level of 8, because it is 9 or more levels less serious than Count Group One. The combined offense level as to Count Group One and Count Group 2 would be 38.

(l) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant waives the right to file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2, and also waives the right to file a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

8. The Defendant waives the right to appeal the guilty plea and conviction. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Under federal law, a broad range of crimes are removable offenses, including the offense to which the Defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction(s) on his immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration

8

consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

10. The Defendant will forfeit to the United States all interest in the property listed in the forfeiture allegation of the superseding indictment, that is, firearms, ammunition, and U.S. currency. The Defendant agrees that there is a nexus between this property and the offenses to which he is pleading guilty, and he will execute any documents necessary for this forfeiture. The Defendant further waives all provisions in Rule 32.2 regarding the timing of the entry of forfeiture orders.

11. The Defendant agrees to the imposition of a forfeiture money judgment in the amount of $400,000.00, which represents the amount involved in the money-laundering offense to which he is pleading guilty. The Defendant agrees that this money judgment constitutes a debt owed to the United States and consents to the forfeiture of any other substitute property up to the amount of the forfeiture money judgment pursuant to 21 U.S.C. § 853(p).

12. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

13. The Defendant agrees to cooperate fully with the United States Attorney's Office and will make a full and complete financial disclosure. Within 30 days from his guilty plea, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

14. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court

imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

15. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

16. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

17. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

18. The Defendant acknowledges that he understands this Agreement, that his attorney has explained it to him, and that his entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
                                       UNITED STATES ATTORNEY


Date: 2/16/23            By:   _____
                                       G. Todd Bradbury
                                       Assistant United States Attorney


Date: 2/16/23                  _____
                                       Luis Fernando Lara-Garcia
                                       Defendant


Date: 2/16/23                  _____
                                       Thomas C. Lyons
                                       Attorney for Defendant