UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:22-92-DCR-7

UNITED STATES OF AMERICA                                    PLAINTIFF

V.                          **PLEA AGREEMENT**

HUMBERTO SAUCEDO-SALGADO                              DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Counts 1 and 4 of the superseding indictment. Count 1 charges conspiracy to distribute detectable amounts of fentanyl and cocaine, in violation of 21 U.S.C. § 846; Count 4 charges conspiracy to launder drug proceeds, in violation of 18 U.S.C. § 1956(h). The Defendant also agrees to forfeiture as outlined in the forfeiture allegation of the superseding indictment. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Count 10 of the superseding indictment.

2a.    The essential elements of Count 1 are as follows:

(a) First, that two or more persons formed, reached, or entered into an agreement or understanding to distribute Schedule II controlled substances, including fentanyl and cocaine.

1

(b) Second, that at some time during the existence or life of the agreement
or understanding, the Defendant knew the purpose of the agreement and
deliberately joined the agreement or understanding.

2b.    The essential elements of Count 4 are as follows:

(a) First, that the Defendant and at least one other person formed, reached,
or entered into an agreement or understanding to commit money laundering
crimes.

(b) Second, that the Defendant knowingly and voluntarily joined the
conspiracy.

3.    As to Counts 1 and 4, the United States could prove the following facts that
establish the essential elements of the offenses beyond a reasonable doubt, and the
Defendant admits these facts:

(a)    Regarding Count 1, from January 2022 to August 2022, the
Defendant agreed with at least one other person to participate in the Lara-Garcia
drug conspiracy. The Defendant leased property on Southland Drive in Fayette
County that was utilized primarily as a barbershop. However, the Defendant
agreed with codefendant Luis Lara Garcia to allow him and other conspirators to
store controlled substances in a back room of the barbershop. Security cameras
installed in the back room of the barbershop recorded criminal activity, including
drug trafficking, firearms and money laundering offenses, committed by the
conspirators. The hard drive containing the video footage was obtained by DEA
during a search warrant, and a second warrant was obtained for the hard drive.

(b)    The Defendant was aware that the quantity of controlled substances
was consistent with distribution and not mere possession for purposes of personal
consumption. On March 22, 2022, the Defendant entered the back room of the
shop and retrieved two large bags containing controlled substances from the floor
in the back room and placed the bags on a table. Less than two minutes later,
codefendant Lara Garcia entered the room, retrieved the substances and distributed

2

them to an unknown male. The unknown male can be seen handing Lara-Garcia a large stack of U.S. currency in exchange for the narcotics.

(c)     Regarding Count 4, the Defendant admits that he participated in the money laundering conspiracy by collecting, storing and distributing U.S. currency that was the proceeds of drug sales. There was a large safe located in the back room of the barber shop that was used for the storage of drug proceeds. Proceeds were also counted in the back room, often with the use of a money counting machine. The money counting machine had been deployed to another codefendant during a "money drop." Agents were able to determine the location of the money counting machine via a GPS tracking device and also able to determine the amount of U.S. currency processed through the machine. The Defendant was aware that conspirators would collect large sums of U.S. currency (typically $100,000 or more) to provide to a courier for the drug organization. The money was used to promote the drug organization's ongoing criminal activities, including, but not limited to, utilizing those funds to pay for more drugs for the organization, and paying expenses incurred in running a drug organization.

(d)     On April 3, 2022, DEA agents executed a search warrant at the Defendant's barbershop. Agents seized $237,940.00 from the safe in the back room. In the sofa in the back room, agents located an additional $5,980.00. The Defendant admits that all of the U.S. currency was proceeds of drug trafficking crimes.

4.    The statutory punishment for Count 1 is imprisonment for not more than 20 years, a fine of not more than $1,000,000, and a term of supervised release of not less than 3 years. The statutory punishment for Count 4 is not more than 20 years, a fine of not more than $500,000 or twice the value of the property involved in the transaction (whichever is greater) and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 per count applies, and the Defendant will pay this $200 assessment to the U.S. District Court Clerk at the time of the sentencing hearing.

3

5. Pursuant to Rule 11(c) (1) (B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2021, Manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all the facts set forth in paragraph three and the provided discovery materials.

(c) Pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(7), the base offense level for Count 1 is 26 based upon a converted drug weight of at least 400 kilograms but less than 700 kilograms.

(d) Pursuant to U.S.S.G. § 2D1.1(b)(1), the base offense level is increased by 2 levels because a firearm was possessed.

(e) Pursuant to U.S.S.G. § 2D1.1(b)(12), the base offense level is increased by 2 levels because the Defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance.

(f) Pursuant to U.S.S.G. § 2S1.1(a)(1), the base offense level for Count 4 is 30 based on the offense level for the underlying offense(s) from which the laundered funds were derived, that is, Count 1.

(g) Pursuant to U.S.S.G. § 2S1.1(b)(2)(B), increase the offense level by 2 levels because the Defendant's conviction is for a violation of 18 U.S.C. § 1956.

(h) Pursuant to U.S.S.G. §§ 3D1.2(d), the offenses in Counts 1 and 4 group. Pursuant to U.S.S.G. § 3D1.3(a), the highest offense level for any individual count within a count group shall be the controlling offense level for the entire group, which, in this case, is an offense level of 32 as to Count 4.

(i) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by

4

2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant reserves the right to file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2. The Defendant waives the right to file a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

8. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant reserves the right to appeal any aspect of the sentence imposed. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Since the Defendant is not a United States citizen, he may be removed from the United States, denied citizenship, and denied admission to the United States in the future as a result of the convictions herein.

10. The Defendant will forfeit to the United States all interest in the property listed in the forfeiture allegation of the superseding indictment, that is, firearms, ammunition, and U.S. currency. The Defendant agrees that there is a nexus between this property and the offenses to which he is pleading guilty, and he will execute any documents necessary

for this forfeiture. The Defendant further waives all provisions in Rule 32.2 regarding the timing of the entry of forfeiture orders.

11. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

12. The Defendant agrees to cooperate fully with the United States Attorney's Office and will make a full and complete financial disclosure. Within 30 days from his guilty plea, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation

6

or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

13. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

14. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

15. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

16. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

17. The Defendant acknowledges that he understands this Agreement, that his attorney has explained it to him, and that his entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

Date: 3/29/23          By: _____
                            G. Todd Bradbury
                            Assistant United States Attorney

Date: 3/29/23          _____
                       Humberto Saucedo-Salgado
                       Defendant

Date: 3/29/23          _____
                       Jeffrey C. Pager
                       Attorney for Defendant

8